UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DARCY RANEE HOFF,<br><br>Defendant. | 4:18-CR-40136-02-KES<br><br>ORDER DENYING MOTION FOR RECONSIDERATION OF COMPASSIONATE RELEASE |

Defendant, Darcy Ranee Hoff, requests reconsideration of the court's order denying her compassionate release dated July 10, 2020 (Dockets 256, 257) and renews her request for relief under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 264. Plaintiff, the United States of America, opposes the motion. Docket 282. For the following reasons, the court denies defendant's motion for reconsideration.

## BACKGROUND

On April 3, 2019, Hoff pleaded guilty to distribution of a controlled substance resulting in serious bodily injury in violation of 21 U.S.C. § 841(a)(1). Dockets 54, 61. On June 24, 2019, the court sentenced Hoff to 240 months in custody and 3 years of supervised release. Dockets 117, 125. The court later reduced Hoff's sentence to 120 months in custody followed by 3 years of supervised release. Docket 252; Docket 254 at 2-3.

Hoff is incarcerated at Federal Correctional Institution (FCI) Hazelton, a medium security facility with a secure female facility, in Bruceton Mills, West

Virginia. Docket 253 at 58; *See* Dockets 244, 245. The total population at FCI Hazelton is currently 1,856 persons. Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/haf/ (last visited Apr. 21, 2021). As of April 21, 2021, there is one active COVID-19 case among inmates at FCI Hazelton. *BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Apr. 21, 2021). FCI Hazelton has reported one inmate death from COVID-19, and 141 inmates and 77 staff have recovered. *Id.*

Hoff is 46 years old. Docket 281 at 1. Hoff alleges she suffers from severe anxiety and depression, carpal tunnel syndrome, and obesity. Docket 244 at 1; Docket 264 at 2. Hoff states her mental and physical health is declining due to the lockdown of inmates at FCI Hazelton. Docket 264 at 3. Hoff is scheduled for release on June 26, 2027. *See* https://www.bop.gov/inmateloc/ (last visited April 19, 2021).

On May 11, 2020, Hoff filed a pro se motion with the court for relief under the First Step Act. Docket 244. Hoff filed an additional motion requesting that she be moved to a facility closer to home. Docket 245. The court denied Hoff's motion for relief under the First Step Act on the grounds that she did not appear to have any medical conditions that placed her at high risk in the event she contracted COVID-19. Docket 256. Additionally, the court held that the First Step Act had already been applied to Hoff's sentence. Docket 257. On August 31, 2020, Hoff filed a pro se motion for reconsideration of the court's previous order, arguing that her medical condition of obesity is grounds for a reduction of sentence. Docket 264 at 2. On January 11, 2021, Hoff filed a

2

supplement to her motion for reconsideration citing various COVID-19 outbreaks within FCI Hazelton. Docket 280.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others. USSG § 1B1.13(1)-(2) (U.S. Sentencing Comm. 2018). The burden to establish a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Hoff argues that the global COVID-19 crisis and her health conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C.

§ 3582(c)(1)(A)(i). *See* Docket 264 at 2; Docket 244 at 4. Hoff requests a sentence of time served or a suspended sentence with a period of probation. Docket 244 at 4.

I.     **Administrative Exhaustion**

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress now permits courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Hoff has not alleged or shown that she submitted a request for compassionate release to the warden of her BOP facility before filing her motions for compassionate release with the court. *See* Dockets 244, 245, 264, 280. There is no evidence in the record that she submitted such a request. Dockets 253, 279, 281. Therefore, Hoff has not exhausted her administrative remedies. Because exhaustion of remedies is a requirement for relief under this section and Hoff has not fulfilled that requirement, her motion is not ripe for review. Even if Hoff had exhausted her administrative remedies, the court would deny her motion for reconsideration because her circumstances do not constitute extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i).

## II.     Extraordinary and Compelling Reasons

Though section 3582(c)(1)(A)(i) provides for compassionate release upon a showing of "extraordinary and compelling reasons," Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). The Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion the criteria to be applied and a list of specific examples. *Id.* The Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four categories. USSG § 1B1.13, cmt. n.1(A)-(C). The four categories pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. USSG § 1B1.13, cmt. n.1(D).

The Sentencing Commission's guidance in § 1B1.13 was provided prior to the passage of the FSA amending section 3582(c)(1)(A) and has not been updated because the commission lacks a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019). As a result, district courts including this one have questioned whether the previous policy statement still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 457 F. Supp. 3d 691, 699 (S.D. Iowa 2020);

5

*United States v. Poole*, 4:15-CR-40099-KES, 2020 WL 4673329, at *2 (D.S.D. Aug. 12, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Vangh*, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); *United States v. Loggins,* 966 F.3d 891, 892 (8th Cir. 2020); *United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020).

The court has detailed the governing law and the analysis it uses when confronted with a compassionate release motion in multiple, previous reported and unreported decisions. *E.g., United States v. Shields*, 3:07-CR-30106-01-KES, 2021 WL 765001, at *2-3 (D.S.D. Feb. 26, 2021); *United States v. Muhs*, 4:19-CR-40023-02-KES, 2021 WL 534517, at *2-3 (D.S.D. Feb. 12, 2021); *United States v. Adame,* 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon*, 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020).

It is clear Congress, through the FSA, intended to increase the use of compassionate release by allowing defendants to directly petition the sentencing court after exhausting administrative remedies. *See* Pub. L. No. 115-391, § 603(b), 132 Stat. at 5239. The statute instructs the court may reduce a term of imprisonment for "extraordinary and compelling reasons" if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Application Notes 1(A)-(D) to guide its analysis. *See, e.g., Muhs*, 2021 WL 534517, at *3.

6

Hoff argues that her obesity condition puts her at high-risk of severe illness if she contracts COVID-19. Docket 264 at 2-3. Based on Hoff's contentions the court will analyze her request for compassionate release under the medical conditions category, USSG § 1B1.13 comment note 1(A), and the catch-all provision, USSG § 1B1.13 comment note 1(D).

### A.   Medical Conditions Category, Note 1(A)

As relevant here, the medical conditions category applies when the defendant is suffering from a serious physical or medical condition that substantially diminishes her ability to provide self-care within a correctional facility and from which she is not expected to recover. USSG § 1B1.13 cmt. n. 1(A)(ii)(I).

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. Recently, the Centers for Disease Control and Prevention (CDC) updated its current understanding of these risks. *See People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Mar. 29, 2021) (last visited Apr. 14, 2021). The CDC now states individuals with the following conditions *can* be more likely to become severely ill from COVID-19: cancer, chronic kidney disease at any stage, chronic lung diseases (including moderate to severe asthma, chronic obstructive pulmonary disease (COPD), cystic fibrosis, and pulmonary hypertension), dementia or other neurological conditions, Down syndrome, diabetes (type 1 or type 2), heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension),

HIV infection, immunocompromised state, liver disease, obesity, being overweight, pregnancy, sickle cell disease or thalassemia, being a current or former smoker, having a solid organ or blood stem cell transplant, history of stroke or cerebrovascular disease, and substance abuse disorders. *Id.*

The court has reviewed the medical records submitted in this case. Hoff's medical conditions include obesity, anxiety, carpal tunnel syndrome, and depression. Docket 281 at 61; Docket 279 at 52; Docket 253 at 47. On January 21, 2021, Hoff weighed 219 pounds and was 65 inches tall. Docket 281 at 3; Docket 253 at 31. Based on her weight and height, her body mass index (BMI) is 36.4, which qualifies her as obese. *See Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited on Apr. 21, 2021). Recently, Hoff discussed her weight with a medical provider. Docket 281 at 1. After reviewing her medication, Hoff indicated that Buspar contributed to her weight gain. *Id.* She was informed by her provider that her prescribed antidepressants, "lead to more weight gain than Buspar."[1] *Id.*

Hoff's other medical conditions—anxiety, depression, and carpal tunnel syndrome—are not recognized among those that can increase the risk of severe illness from COVID-19. Her medical conditions are also managed with

---

[1] The court presumes that the BOP report indicating "TCA" is referencing a tricyclic antidepressant. *See* Healthline, *Tricyclic Antidepressants*, https://www.healthline.com/health/depression/tricyclic-antidepressants-tcas (last visited Apr. 16, 2021).

medication. Docket 253 at 12, 88. This leads the court to believe Hoff's medical conditions are well-controlled. She appears to be receiving proper management within the correctional facility. Furthermore, there is no indication in the records that Hoff is unable to provide self-care within the correctional facility.

This court has required a more particularized showing of risk and has concluded obesity alone or in combination with other conditions that might increase the risk is not an extraordinary and compelling reason warranting compassionate release in the age of the COVID-19 pandemic. *See, e.g., United States v. Wright*, 4:16-CR-40083-04-KES, 2021 WL 391605 (D.S.D. Feb. 4, 2021) (denying compassionate release to defendant with BMI of 35.5 or 33.3, bipolar disorder, asthma, latent tuberculosis infection, and chronic and allergic rhinitis); *Adame*, 2020 WL 7212096, at *4-5; (denying compassionate release to defendant with BMI of 33.8, asthma, anxiety, and positive case of COVID-19); *United States v. McAbee*, 4:14-CR-40027-01-KES, 2020 WL 5231439, at *3-4 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons). Hoff's conditions are similar to those where the court has denied compassionate release motions.

The court believes Hoff's medical conditions are appropriately managed at FCI Hazelton, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and it would act to treat any inmate who does contract COVID-19. The fact that FCI Hazelton had a COVID-19 outbreak does not negate such conclusions. There was one death as a result, and 140 inmates recovered. This persuades the court that FCI Hazelton has acted

appropriately to treat inmates who do contract COVID-19.

The Bureau of Prisons continues to act to protect inmates from future COVID-19 outbreaks. A COVID-19 vaccination plan has been implemented and the BOP is administering vaccines to inmates and staff. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Apr. 19, 2021). As of April 18, 2021, 136,572 doses have been administered systemwide. *Id.* At the Hazelton Federal Correctional Complex, 369 staff and 1,138 inmates have been fully inoculated as of April 18, 2021. *See Learn More About Vaccinations and View Individual Facility Stats*, https://www.bop.gov/coronavirus/. According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

*Id.*

The court understands Hoff's health concerns in the age of COVID-19 and does not minimize those concerns. But Hoff's health conditions coupled with the present conditions at FCI Hazelton do not establish "extraordinary and compelling reasons" justifying her early release.

### B. Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are "extraordinary and compelling reasons" other than, or in combination with, those identified in 1(A)

10

through 1(C). USSG § 1B1.13, cmt. n.1(D). Even after considering the ongoing COVID-19 pandemic combined with Hoff's medical conditions, the court is not convinced that "extraordinary and compelling reasons" exists to release Hoff from custody early.

### III. Sentencing Factors of § 3553(a)

A review of the 3553(a) factors further supports that Hoff's circumstances fail to meet the high bar of "extraordinary and compelling reasons" warranting a sentence reduction.

Hoff pleaded guilty to distribution of a controlled substance resulting in serious bodily injury in violation of 21 U.S.C. § 841(a)(1). The victim in this case overdosed on heroin, which Hoff provided to him. Docket 113 ¶ 13. Hoff was with the victim when he overdosed and fled the scene. *Id.* ¶ 15. The total offense level was calculated as 35, and Hoff had four scorable criminal history points resulting in a criminal history category III. *Id.* ¶¶ 32, 46. The offense had a mandatory minimum sentence of 240 months in custody. *Id.* ¶ 69. The advisory guideline range for Hoff's sentence was 240 to 262 months. *Id.* ¶ 70. The court sentenced Hoff to the mandatory minimum sentence of 240 months. Docket 125 at 2. Later, the court reduced Hoff's sentence. Docket 254 at 2.

Hoff's current sentence of 120 months is already significantly less than the court's initial sentence. Under the circumstances, the court finds Hoff's sentence of 120 months in custody with three years of supervised release continues to be appropriate for the seriousness of the crime to which she pleaded guilty.

## CONCLUSION

Hoff has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for reconsideration (Docket 264) is denied.

Dated April 21, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE